UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Salmer-Orchard Associates, LLC and
Gerald Clixby,                                             Case No. 13-14345

        Plaintiffs,                                  Honorable Nancy G. Edmunds

v.

Pontiac, City of., et al.,

        Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS [31]

Plaintiff Gerald Clixby owns and operates Orchard Woods Apartments through Plaintiff Salmer-Orchard Associates, LLC (collectively, "Plaintiffs.").  The defendants in this case are Pontiac, its city manager, its "Building and Safety Division," (collectively "Defendant Pontiac"), and Wade Trim, Associates, Inc ("Defendant Wade Trim.").

Plaintiffs allege that Defendant Wade Trim, hired by Defendant Pontiac, has been conducting unnecessary and overpriced inspections of Orchard Woods in violation of Michigan housing law.

Defendant Pontiac issued citations to Plaintiffs, which Plaintiffs did not pay. Defendant Pontiac then filed suit in Michigan state district court for Plaintiffs' failure to pay the citations.  Plaintiffs, after two defaults, appeared in the state district court and admitted not paying the citations.  The state district court would not hear Plaintiffs' arguments relating to their defenses in state court.  Plaintiffs appealed.  The parties consolidated the

cases relating to the failed citations, eight in total, in the Oakland County Circuit Court, before Judge Martha Anderson.

In the state district court, Plaintiffs attempted to raise the issues that they now raise in this case–that the inspections violate Michigan housing law and their state and federal constitutional rights.  The state district court did address the issues Plaintiffs raised.  The state district court found that it did not have jurisdiction to adjudicate Plaintiffs' issues.  Plaintiffs accepted that ruling and appealed the citations to Oakland County Circuit Court, where the state circuit court entered a stipulated order requiring all appeals of the citations to be consolidated into one case.  Plaintiffs did not raise their defenses in the consolidated cases or add new claims or seek to amend, even though means by which to do so existed in the Michigan Court Rules.  Instead, Plaintiffs filed an independent suit against Defendant Pontiac and Defendant Wade Trim.  The independent suit initially contained no federal claims.  But Plaintiffs amended the complaint, adding a 42 U.S.C. § 1983 claim, alleging that Defendants violated their federal constitutional rights.

Defendant Wade Trim, noting the federal claim in the amended complaint, removed the case to federal court. (Dkt. 1.)  In that removal notice, Defendant Wade Trim noted that Defendant Pontiac concurred with the removal.  (*Id.*)  All the parties noticed appearances in this action.  A week later, on October 22, 2013, Defendant Wade Trim filed a motion to dismiss.  (Dkt. 10.)  On November 7, 2013, the Court dismissed the state law claims, retaining only the 42 U.S.C. § 1983 claim.  (Dkt. 12.)

On November 14, 2013, Plaintiffs filed their motion to remand the case back to state court, alleging that the Court does not have subject matter jurisdiction over the case.  (Dkt. 13, 14.)  On December 3, 2013, Plaintiffs filed their motion to strike Defendant Wade Trim's

2

motion to dismiss, motion in the alternative to enlarge time to respond, motion to nullify order of dismissal or confer, and motion in alternative to amend pleadings.  (Dkt. 18, 19.)

On March 21, 2014, the Court denied Plaintiffs' motion to remand and motion to strike. (Dkt. 28.)  Given that order, the only claim that remains pending is Plaintiffs' 42 U.S.C. § 1983 claim.  In that order, the Court permitted Defendants to file a second motion to dismiss that focused solely on the remaining claim.

On April 1, 2014, Defendant Wade Trim filed its renewed motion to dismiss, which is now before the Court.  (Dkt. 31.)  The Pontiac Defendants joined in the renewed motion.[1] (Dkt. 33.)

Because the Court agrees with Defendants, that Plaintiffs have made conclusory allegations of a 42 U.S.C. § 1983 violation, despite have the time and opportunity to assert facts in support of that claim, the Court GRANTS Defendants' motion to dismiss.[2]

I.    **Facts**[3]

   A.  **The parties**

_____

[1]While Defendant Wade Trim solely filed the motion, the Court refers to "Defendants" in this order to represent all of the defendants, unless otherwise specified.

[2]Plaintiffs, in their response, request that the Court permit them to amend their claim if the Court finds the claim insufficient.  The Court declines to do so.  Plaintiffs have made no factual allegations, anywhere, not even in their response, that even indicate that a constitutional violation actionable through 42 U.S.C. § 1983 has been made.

The Court held a hearing on this matter on May 28, 2014.  At the hearing, the Court repeatedly asked Plaintiffs' counsel if he could identify a federal constitutional right that Defendant allegedly violated.  Despite the opportunity, Plaintiffs' counsel could not identify a right or facts that would support a violation of that right.

[3]The Court takes the facts primarily from its June 21, 2014 order.  (Dkt. 28.)

Plaintiff Salmer-Orchard Associates, LLC, is a Michigan Limited Liability Company, conducting business in Pontiac, Michigan. (Am. Compl. ¶ 1.) Plaintiff Gerald Clixby is Plaintiff Salmer's resident agent. (*Id.* ¶ 10.) Plaintiff Clixby manages the property. (*Id.*)

Defendant City of Pontiac is a municipal corporation in Michigan, located in Oakland County, and organized and existing under Michigan's laws. (Am. Compl. ¶ 2.) Defendant Louis H. Schimmel is Pontiac's emergency manager. (*Id.* ¶ 3.) Defendant Pontiac Building and Safety Division is a division of Pontiac that is authorized to perform certain duties, including registration and inspection of multiple family apartment buildings in Pontiac. (*Id.* ¶ 4.)

Defendant Wade Trim Associates, Inc., is a Michigan corporation doing business in Pontiac. (Am. Compl. ¶ 5.)

### B. Background

Plaintiff Salmer-Orchard owns The Orchard Woods Apartments, a four-building apartment complex in Pontiac. (Am. Compl. ¶ 9.) The four buildings contain sixty-eight units. (*Id.*) Plaintiffs state that most of the tenants are senior citizens on fixed incomes or residents living close to the poverty level and require some form of public assistance. (*Id.*)

Plaintiffs have owned and managed the apartment complex for over thirty years. (Am. Compl. ¶ 11.) They maintain that they have had no record Pontiac City Code violations for the thirty-three years. (*Id.* ¶ 12.)

In 2003, Plaintiffs state that they filed suit against Pontiac and various city officials, arising out of a dispute about Pontiac's inspector fees and inspection procedures. (Am. Compl. ¶ 13.) Plaintiffs say that, prior to filing that complaint, Plaintiff Clixby had challenged Pontiac's method of calculating and setting of the inspection and registration fees. (*Id.*)

4

The complaining, Plaintiffs allege, resulted in Pontiac's "unauthorized and malicious" "inspection" of Plaintiffs' buildings. (*Id.*) Pontiac officials, Plaintiffs state, early one morning, disturbed the tenants and posted condemnation notices on the tenants' apartments that stated that the tenants had ten days to vacate. (*Id.*)

Plaintiffs state that that case concerned whether Pontiac followed Michigan law or its own ordinances in setting rates for registration and inspections of apartments that were "commensurate with [Pontiac's] reasonable costs in performing such services." (Am. Compl. ¶ 14.) On February 26, 2003, Plaintiffs state that the state court ordered Pontiac to "review its policy regarding the amount of inspection fees it charge[d] property owners." (*Id.*) Plaintiffs maintain that Pontiac never complied with that order. (*Id.*) Plaintiffs further maintain that the parties settled the 2003 dispute. (*Id.* ¶ 15.) The settlement required, Plaintiffs state, that Pontiac pay $175,000.00 to Plaintiffs and that Pontiac justify its registration and inspection fees. (*Id.*) Plaintiffs allege that the justification never occurred. (*Id.*)

In 2012, Plaintiffs state that Pontiac advised them of its current registration and inspections fees, "which were substantial in nature." (Am. Compl. ¶ 16.)

Plaintiffs explain that Pontiac has a depressed rental market. (Am. Compl. ¶ 17.) Plaintiffs state that their tenants are not able to afford rent increases. (*Id.*) They then state that Pontiac's inspection and registration fees would cause the tenants a problem because they would have to pass the fees to the tenants by increasing rental rates. (*Id.*) Plaintiffs suggest that the increased rental rates would "likely result in further marginalization of the property due to increased vacancies." (*Id.*)

5

Plaintiffs state that, when Plaintiff Clixby learned of the current fee structure, he went to Pontiac's building department and asked how Pontiac calculated the fees.  (Am. Compl. ¶ 18.)  Plaintiffs state that the building department told Plaintiff Clixby that he could pay a slightly lesser amount than originally required, but that the department gave him no information on how the fees were calculated or if the fees corresponded to actual expenses.  (*Id.*)  Plaintiffs state that Mr. Clixby offered to pay $400.00 total for the four buildings, but the department declined the offer.  (*Id.*)

Plaintiffs detail that they have learned that Pontiac and its officials

have been working in concert with [Defendant] Wade Trim and its agents to implement and carry out the unlawful and improper practices and policies of the municipal defendants such that the municipal entities and officials have become the alter ego of Wade Trim and vice versa, and they have become dual, mutual, and ostensible or explicit agents for one another for purposes of the acts and omissions detailed therein, for personal and private gain in violation of Michigan statutes, [Pontiac] ordinances, and against the best interests of the public.

(Am. Compl. ¶ 19.)

Plaintiffs maintain that Defendants "have maliciously, intentionally and knowingly acted in active concert with one another . . . pursuant to a common plan or purpose to exact monies from the public that are unreasonable and are for secret or other profit of [Defendant] Wade Trim."  (Am. Compl. ¶ 21.)  Plaintiffs allege that Defendant Wade Trim has acted under the color of law "to exact profits from the public[.]" (*Id.*)

Plaintiffs state that when Mr. Clixby refused to pay the fees without receiving an explanation, he received, and has continued to receive, citations from Pontiac for Plaintiffs' failure to register Orchard-Woods and pay the inspection fees.  (Am. Compl. ¶ 22.)

6

Plaintiffs state that they initially contested the citations in state district court.  (Am. Compl. ¶ 23.)  Plaintiffs add that, in each case, the district court refused to take any testimony about the legitimacy of the fees, and judgments were entered against [Plaintiff] Clixby, personally (instead of the owner–Salmer-Orchard).  (*Id.*)

Plaintiffs state that Plaintiff Clixby surveyed neighboring cities and HUD as to what they charged for inspections and registrations.  (Am. Compl. ¶ 24.)  Plaintiffs state that HUD charged $350.00 to randomly inspect 138 units at the Parkside Apartments.  (*Id.*)

Plaintiffs requested a meeting with the Pontiac Defendants.  (Am. Compl. ¶ 25.)  On May 28, 2013, the parties met.  (*Id.*) At the meeting, Plaintiffs claim that Wade Trim had personnel there because Pontiac outsourced a contract to Defendant Wade Trim to handle registrations and inspections.  (*Id.*)

Plaintiffs obtained the Pontiac-Wade Trim contract after submitting a FOIA request.  (Am. Compl. ¶ 26.)  Plaintiffs state that the parties, at the May 28 meeting, told Plaintiff Clixby that "the contract provided payment to [Defendant Wade Trim] based on its costs, plus a percentage mark-up or profit."  (*Id.* ¶ 27.)

### C.  Relevant procedural history

On June 12, 2013, Plaintiffs appeared at the 50th District Court of Oakland County.  (Pls.' Mot. for Alternative Relief, Ex. A, June 12, 2013 50th District Court for the County of Oakland hearing transcript.)   The court set the hearing for Plaintiffs' failure to pay inspection and registration fees.  (*Id.*)  At the time of the hearing, Plaintiffs had already received three citations, which Plaintiff Clixby contested, without counsel.  Those three citations were on appeal. At the hearing, the judge stated that the only thing the court was going to address was whether the Orchard-Woods apartments were registered.  (*Id.* at 7.)

7

Despite the court's limiting the issue, Plaintiffs' counsel explained their defense–that the Michigan law governing the inspections requires the inspection fees to be reasonable and to correlate with the actual expenses of the city.  (*Id.*)  Plaintiffs' counsel also addressed the court's limiting of the case's issue.  (*Id.* at 8-9.)  Plaintiffs' counsel stated that, given the district court's reluctance to address the Michigan law issues, counsel felt as if he needed to make a record that he did raise the issues and then that he had to appeal the citations to the circuit court and raise the defenses at that level.  (*Id.* at 9.)  The district court judge continued to maintain that the defense was not a district court issue.  (*Id.* at 10.)  Also during the hearing, Plaintiffs admitted that they did not pay the registration fees and accepted liability for the citations.  (*Id.* at 19.)

On August 23, 2013, the parties again appeared in front of the district court and admitted liability on two more citations.  (Pls.' Mot. for Alternative Relief, Ex. B, August 23, 2013 50th District Court for the County of Oakland hearing transcript.)

In total, Plaintiffs received eight citations, which they appealed to the Oakland County Circuit Court.  (Pls.' Mot. to Remand, Ex. B.)

On October 9, 2013, the Oakland county circuit court judge entered a stipulated order. (Pls.' Mot. to Remand, Ex. D, October 9, 2013 Order.)  With the order, Defendant Pontiac and Plaintiffs agreed to consolidate the appeals of the civil infractions.  (*Id.*)  The order stated:

> it is further stipulated and agreed, by and between the parties [(Defendant Pontiac and Plaintiffs)] that . . . all appeals from [Plaintiffs] concerning the building ordinance civil infraction tickets should be assigned to this [c]ourt as involving a substantial and controlling common questions of law[.]"

(*Id.*)

8

Before Plaintiffs had appealed all of the citations, on August 6, 2013, Plaintiffs filed a separate complaint against Defendant Pontiac and Defendant Wade Trim. (Notice of Removal, Compl.) In their initial complaint, Plaintiffs identified several then-pending civil actions involving the same transaction or occurrences on which Plaintiffs based their complaint. (*Id.*) Plaintiffs' counsel, in an email to Defendant Pontiac's counsel, stated,

> [m]y intent in filing the [c]omplaint is to consolidate all the appeals into it which I feel will make all the issues easier to deal with. I do not intend to file appellate briefs if we can agree to let the [c]omplaint be the primary pleading and work from there. The [c]omplaint seeks injunctive relief regarding the issue of further tickets, etc., but I have not noticed it up for hearing pending your response to whether we can agree that there will be no more tickets issued pending resolution of the [c]omplaint.

(Pls.' Mot. to Remand, Ex. E.)

Over a month later, on September 25, 2013, Plaintiffs amended their complaint, adding a federal claim. (Pls.' Mot. to Remand, Ex. A.) On October 15, 2013, Defendant Wade Trim removed the case to federal court. (Dkt. 1.)

### D. Plaintiffs' amended complaint claims[4]

Plaintiffs first allege that Defendants have violated Michigan's housing law, Mich. Comp. Laws § 125.401 *et seq.*, and Pontiac's city ordinance.[5] (Am. Compl. ¶¶ 28-43.) Plaintiffs state that Michigan law requires inspection fees to be the actual and reasonable

---

[4]The Court reviews several of the Amended Complaint's claims for the context they provide, even though Count IV is the only claim left in this case.

[5]Michigan Compiled Law § 125.526(12) provides,
> [t]he enforcing agency may establish and charge a reasonable fee for inspections conducted under this act. The fee shall not exceed the actual, reasonable cost of providing the inspection for which the fee is charged. An owner or property manager shall not be liable for an inspection fee if the inspection is not performed and the enforcing agency is the direct cause of the failure to perform.

9

cost. Plaintiffs maintain that the fees that Defendant Wade Trim and Defendant Pontiac are charging are not actual and reasonable, and include a marked up profit. (*Id.* ¶ 29.) Plaintiffs further allege that "Defendants have failed and refused to provide any evidence or explanation to justify the[] profits as actual reasonable costs[.]" (*Id.*)

Plaintiffs state that Defendant Pontiac has adopted Michigan housing law into its city charter. (Am. Compl. ¶ 30.) Plaintiffs have set forth Defendant Pontiac's fees for rental registration and inspection fees. (*Id.* ¶ 31.) Applying the fees, Plaintiffs state that their total fees should be $3,425.00 for four buildings, seven initial inspections, and sixty-one special inspections. (*Id.* ¶ 32.)

Plaintiffs state that, in 2011, Defendant Pontiac hired Defendant Wade Trim to provide, among other things, apartment inspection and registration services. (Am. Compl. ¶ 35.) (Am. Compl., Ex. 1.)

The agreement, The Professional Services Agreement, provided for monthly payments of $80,000.00 for services rendered, including housing inspections. (Am. Compl. ¶ 36.) Plaintiffs state that that amount includes costs and Defendant Wade Trim's profit percentage. (*Id.*) Plaintiffs allege that "[t]here does not appear to be any correlation between the amount of the monthly payment and the actual cost to inspect." (*Id.* ¶ 37.) Plaintiffs assert that, given that each apartment only takes five to six minutes to inspect, "the fees are exorbitant." (*Id.*)

Plaintiffs state that, if Defendant Pontiac were to conduct the inspections itself, it would not be allowed to profit. (Am. Compl. ¶ 38.) Given that Defendant Pontiac is contracting out the inspections to Defendant Wade Trim, and Defendant Wade Trim is

10

receiving profits, Plaintiffs assert that Defendants are violating Michigan housing law since the fees are "beyond the reasonable expense of providing the services." (*Id.*)

Plaintiffs maintain that their interpretation of the housing law is reasonable, given that "[a]ny other interpretation would allow municipalities to outsource inspection services without regard to the profit or costs charged by the private entity, making a mockery of the obvious intent of the law, to have fees in the minimal amount necessary to cover the actual expense." (Am. Compl. ¶ 39.)

Plaintiffs point out that Defendant Pontiac requires triennial inspections, whereas Michigan law requires inspections once every six years if no violations are found. (Am. Compl. ¶ 34.)

Plaintiffs state that the increased inspection costs have forced them to pass the costs onto the residents, which, they claim, the residents cannot afford. (Am. Comp. ¶ 40.)

Plaintiffs state that Defendants Pontiac and Wade Trim amended their agreement in 2012. (Am. Compl. ¶ 40.) The amended agreement allowed Defendant Wade Trim to mark up its expenses by fifteen percent. (*Id.* ¶ 41.) The amended agreement also provided for an increased monthly payment of $115,000.00. (*Id.*) Plaintiffs also allege that the amended agreement incentivizes Defendant Wade Trim "to conduct extensive and unnecessary inspections to insure that the fees generated achieve the monetary amounts [necessary,] . . . [to] earn greater profits." (*Id.* ¶ 42.)

For the housing violation, Plaintiffs request a preliminary and then a permanent injunction to enjoin Defendant Pontiac "from issuing any further citations to Plaintiffs, regarding inspection/registration fees for Orchard-Woods and preventing [Defendant] Pontiac from enforcing any current, outstanding citations[.]" (Am. Compl. ¶ 43.) Plaintiffs

11

also request that the Court "[d]eclare that the judgments rendered against Plaintiff, Gerald Clixby, in the [51st] District Court, be rendered null and void as they were based on the unlawful collection practices of the City of Pontiac[.]" (*Id.*)  Plaintiffs request monetary damages, attorneys' fees, and other relief. (*Id.*)

In their second count, Plaintiffs allege that Defendant Pontiac's actions, through Defendant Wade Trim's actions, amount to constitutional violations, "including but not limited to the rights of equal protection of the laws and due process of law[.]" (Am. Compl. ¶ 45.)  Plaintiffs further allege that the housing law is unconstitutionally vague, allows for the taking of private property by a government authority without the proper procedural or substantive safeguards and without just compensation.  (*Id.*)  Plaintiffs go on, stating that Defendants have violated local government provisions and the Michigan constitution by unconstitutionally delegating legislative and executive power to unelected and unappointed figures, and by otherwise violating "property and liberty interests protected by the constitutional guarantees of due process and equal protection of the laws."  (*Id.* ¶ 46.)

Plaintiffs request that the Court enter a declaratory judgment that Defendants are applying Michigan housing law and the Pontiac ordinance in a constitutionally violative manner.  (Am. Compl. at 10-11.)  Plaintiffs request that the Court declare the statutes null and void if the Court finds that the statutes or ordinances conflict with or violate constitutional protections.  (*Id.* at 11.)

Counts three and four request the same relief; count four alleges a 42 U.S.C. § 1983 claim.

In Count Four, Plaintiffs allege that "[t]here is an actual case and controversy," "whether Defendants and their agents, acting under color of state law, have violated and

12

are violating the constitutional rights of Plaintiffs[.]" (Am. Compl. ¶ 52.)  Plaintiffs allege that Defendants have deprived them "of rights secured by the constitution." (*Id.* ¶ 54.)  Plaintiffs add that Defendant acted under the color of state law and that they have "obtained significant aid from the State of Michigan or its officials, and their conduct is otherwise chargeable to the State of Michigan or other state actors or entities in addition to Defendants." (*Id.* ¶¶ 56, 57.)  Plaintiffs make explicit that "[t]he injuries suffered by [them] include the deprivation of their rights not to be deprived of property or liberty without due process of law and the deprivation of the right to equal protection of the laws[.]"  (Am. Compl. ¶ 60.)

## II.   Analysis

Defendants argue that dismissal is appropriate for two reasons.  Defendants first argue that res judicata bars Plaintiffs' complaint.  Defendants then argue that, even if res judicata does not bar the complaint, Plaintiffs still have failed to state a claim.

The Court disagrees with Defendants that res judicata bars this complaint.  This case presents a set of facts that does not warrant a finding of res judicata, because Plaintiffs were prohibited from raising their defense in the state court, although they tried, and relatedly, because no court fully litigated their arguments.  But while the Court disagrees with Defendants' first argument, the Court agrees that Plaintiffs' complaint fails to state a 42 U.S.C. § 1983 cause of action.  Plaintiffs have only offered the most conclusory of allegations in its federal claim.  The Court therefore dismisses the federal cause of action, and this case, with prejudice.  While Plaintiffs have stated that they have facts to support a federal constitutional claim, and request leave to amend, they have identified no specific claim and no facts to support an alleged claim.  Here, the Court finds that Plaintiffs'

complaint fails. The complaint, at best, sets forth a violation of a Michigan statute. A violation of that statute, though, does not create a federal constitutional violation actionable by 42 U.S.C. § 1983, as discussed below.

### A. Res judicata does not bar Plaintiffs' action

The Court applies Michigan's res judicata doctrine. *Doe ex rel. Doe v. Jackson Local Sch. Dist.*, 422 F.App'x 497 (6th Cir. 2011) (citation omitted). "[R]es judicata bars a subsequent action between the same parties when the evidence or essential facts are identical. A second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Bryan v. JP Morgan Chase Bank*, ___ N.W.2d ___, 2014 WL 1394782 (Mich.Ct. App. Apr. 10, 2014) (citation omitted). Michigan courts broadly apply the res judicata doctrine. *Id.* (citation omitted). They bar "not only claims already litigated, but [also] every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* (citation omitted). Res judicata's purpose is "to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation." *Id.* (citation omitted).

Defendants argue that the state district court cases were decided on the merits. (Defs.' 2d Mot. to Dismiss at 14.) Defendants represent that the state district court entered eight separate judgments upholding the validity of the citations. (*Id.*) Defendants then argue that the same parties or their privies are involved in this case and in the state district court. (Defs.' Mot. to Dismiss at 14.) Defendants finally argue that the state district court

did or could have decided the issues in this case during the prior case.  (Defs.' 2d Mot. to Dismiss at 15.)

Plaintiffs respond that a res judicata determination is not appropriate in a motion to dismiss and that the Court has already held that the state case did not adjudicate the issues in this Court.  (Pls.' Resp. at 13-14.)

The Court rejects Defendants' arguments.  As the Court discussed in its prior order, the state district court expressly prohibited Plaintiffs from raising their affirmative defenses at the district court level.  The state district court said that it would only address whether Plaintiffs' buildings were registered, and no other claims.

Here, Defendants' argument fails for two reasons.  Their argument first fails because at res judicata's first element--for the matter in the state court has not be adjudicated to finality.  When the case came to federal court, Plaintiffs were in the process of appealing and asserting their arguments in state court.  The Court has now remanded those claims to state court and, to the best of the Court's knowledge, those claims have begun pending again.  Defendants have therefore not established res judicata's first element.

Defendants have also not shown that the matter could have been litigated in the state court action.  At the state court, the district judge expressly forbade Plaintiffs from addressing their desired constitutional affirmative defensives.  The matter, therefore, as Plaintiffs phrase it, could not have been adjudicated at the state level before Defendant Wade Trim removed the case.

The Court therefore rejects Defendants' res judicata argument.[6]

---

[6]The Court has reviewed the cases that Defendants cite in their brief concerning res judicata.  Those cases are not analogous to this case.  Here, Plaintiffs were faced with the

### B.  Plaintiffs fail to state a 42 U.S.C. § 1983 claim

"To state a claim under § 1983, [a plaintiff] must establish: '(a) deprivation of a right secured under the Constitution or federal law; and (b) that deprivation was caused by a person acting under color of state law.'"  *Aarti Hospitality, LLC v. City of Grove City, Ohio*, 350 F. App'x 1, 11 (6th Cir. 2009) (citation omitted).

Plaintiffs argue that they have met the minimal pleading standards and have identified that Defendants violated a federal right and that Defendants acted under the color of state law.  (Pls.' Resp. at 6.)

Defendants argue that Plaintiffs' amended complaint fails to state a claim because, in the amended complaint, Plaintiffs offer "threadbare allegations" that "do not meet federal pleading standards."  (Defs.' Mot. to Dismiss at 17.)  Defendants maintain that Plaintiffs have not alleged that Defendant Wade Trim violated a federal constitutional right.  (*Id.* at 18.)  Defendants go on, arguing that Plaintiffs have not alleged an equal protection or a procedural or substantive due process rights cause of action.

### 1.  Plaintiffs need to allege more than conclusory allegations

Plaintiffs argue that a 42 U.S.C. § 1983 cause of action has more relaxed pleading standards.  (Defs.' Resp. at 7.)  They state that they only need to offer "notice pleading" and not comply with a heightened pleading standard.  (*Id.*)

---

unique situation that the district court judge prohibited them from raising their argument at the state district level.  While the Court has stated that Plaintiffs may have not appealed the case properly and instead filed a new complaint, the Court finds that Defendants' res judicata argument is not well-founded and has been a waste of judicial resources.  This holding does not go against any of res judicata's purposes.

The Court disagrees.  Plaintiffs must plead facts in support of their claim.  Their arguments to the contrary are unavailing.  *See Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) ("In the context of a civil rights claim, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim.") (addressing the plaintiff's equal protection claim; and quoting "some factual basis for such claims must be set forth in the pleadings.") (brackets and citations removed.).[7]

As Defendants point out, Plaintiffs have not set forth specific factual allegations of an equal protection or a due process violation.

### 2.  Plaintiffs have not set forth specific factual allegations of an equal protection claim

A plaintiff can proceed on an equal protection claim under two theories.  Under the traditional equal protection violation under § 1983, a plaintiff "must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected

---

[7] *See Scrap Yard, LLC v. City of Cleveland*, 513 F. App'x 500, 504-05 (6th Cir. 2013) (holding that the district court did not apply a heightened pleading standard in the 42 U.S.C. § 1983 "unspecified deprivation of rights to due process of law" and substantive due process claims when it applied an *Iqbal/Twombly* motion to dismiss standard.).  In *Scrap Yard*, the court affirmed the dismissal of the procedural due process claim, which "asserted vague claims that [Cleveland] sought 'code compliance' notwithstanding the fact that plaintiffs' property was 'exempt from certain other restrictions.'"  *Id.* at 505 (quotation marks omitted).  The court noted that the plaintiffs also alleged that "this seeking of 'code compliance,' was the proximate cause of the violations of Plaintiffs' federally protected rights."  *Id.* (quotation marks and brackets omitted).  The court held that "[i]t is unclear how a city seeking to ensure that a property complied with a zoning code, without any more details, violates civil rights."  *Id.*  The Sixth Circuit also upheld the dismissal of a substantive due process claim in which the plaintiffs alleged that "[t]he Defendants, acted under color of law to deprive the Plaintiffs of their civil rights . . . [and that] . . . [s]uch conduct was the proximate cause of the violation of Plaintiffs' federally protected rights."  *Id.*  The Sixth Circuit held that that allegation was insufficient to withstand a motion to dismiss, for the plaintiffs did not "specify what the improper conduct was or precisely what rights were violated."  *Id.*

class."  *Id.* (citation omitted).  "To support such an inference, [a plaintiff] 'must demonstrate that the government treated [him] disparately as compared to similarly situated persons[.]'"  *Id.* (citations omitted, first insertion in *Aarti.*).

Under the class of one equal protection theory,  "[a] plaintiff[] must plead and prove that they were 'intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment.'" *Rapp v. Dutcher*, __ F. App'x __, 2014 WL 594064, at *5 (6th Cir. Feb. 18, 2014).  "To meet that standard and survive a Rule 12(b)(6) motion to dismiss, the [plaintiff's] complaint must contain enough factual matter to plausibly show that there was not '*any* conceivable basis' that rationally supported the enforcement of the rental license ordinances."  *Id.* (citation omitted, emphasis in *Rapp.*).

Not only have Plaintiffs not alleged that they are in a protected class, but Plaintiffs have also not identified any other entity or person in their complaint that the Court could consider similarly situated under a traditional or class of one equal protection theory. Plaintiffs state that HUD charged neighboring city apartments and found that HUD charged a much smaller amount for apartment inspections.  (Am. Compl. ¶ 24.)  But, Plaintiffs have not shown how these other cities are similarly situated--for they are different cities and have different municipal codes.  To be similarly situated for an actionable equal protection claim here, Plaintiffs would have had to allege that Defendants treated them differently from other apartment owners/complexes in Pontiac.  Plaintiffs have failed to do so and therefore have failed to state an equal protection claim.

### 3.  Plaintiffs have not set forth specific factual allegations of a denial of procedural or substantive due process

18

Defendants argue that Plaintiffs have failed to allege cognizable violations of procedural or substantive due process.  (Defs.' Mot. at 20.)

To establish a procedural due process claim, a plaintiff must show "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the . . . interest." *Jasinski v. Tyler*, 729 F.3d 531, 541 (6th Cir. 2013) (citation omitted).[8]

Here, the Court finds that there are no allegations set forth in the complaint to indicate a procedural due process violation.[9]  Regardless of the first two elements of a procedural

---

[8]"A liberty interest may be created by state law when a state places 'substantive limitations on official discretion.'"  *Jasinski v. Tyler*, 729 F.3d 531, 541 (6th Cir. 2013) (citation omitted). "A state may create such limitations by establishing 'substantive predicates' to govern official decision-making . . . and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met."  *Id.* (citations and quotation marks omitted).  "The state statute must use 'explicitly mandatory language' requiring a particular outcome if the articulated substantive predicates are present."  *Id.* (citations and quotations marks omitted)."The Fourteenth Amendment's procedural protection of property is a safeguard of the security interests that a person has already acquired in specific benefits."  *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 622 (6th Cir. 2013) (citation omitted).  "Property interests are not created by the Constitution, instead they are created and defined by independent sources such as state law."  *Id.* (citation omitted).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must instead have a legitimate claim of entitlement to it."  *Id.* (citation omitted." "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  *Id.* (citation omitted).

[9]"[I]n order to state a procedural due process claim under section 1983 'the plaintiff must attack the state's corrective procedure as well as the substantive wrong.'"  *Nunn v. Lynch*, 113 F. App'x 55, 61 (6th Cir. 2004) (citation omitted).  "A plaintiff 'may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations.'  *Id.* (citations omitted) Plaintiffs fail in addressing this aspect of the pleading requirement as well.  And the Court notes that Plaintiffs had opportunities for judicial redress.  "A municipality's refusal to provide a post-termination hearing does not constitute a due process violation where an

due process claim, Plaintiffs indicate in their complaint that they received notice of the violations and an opportunity to be heard after the violations issued.  Given that representation and Plaintiffs' failure to set forth any specific factual allegations supporting a claim, the Court finds that Plaintiffs fail to state a procedural due process claim and the Court dismisses the claim.

To establish a substantive due process claim under 42 U.S.C. § 1983 in a noncustodial setting, "a plaintiff must prove that the government actor either intentionally injured the plaintiff or acted arbitrarily in the constitutional sense."  *Harrison v. Oakland Cnty*, 612 F.Supp.2d 848, 866-67 (E.D.Mich. 2009) (Rosen, C.J.) (citation omitted).  In a zoning regulations context, a plaintiff asserting a substantive due process claim must show "that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action."  *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (citation omitted).

---

adequate state corrective judicial process exists."  *Nunn*, 113 F. App'x at 61 (citation omitted) (and upholding the dismissal of the plaintiff's complaint because the plaintiff did not allege the inadequacy of the state's judicial process for the correction of errors by administrative agencies.").

*See also See Heary v. McFaul*, 65 F. App'x 927, 929 (6th Cir. 2003) (affirming the district court's 12(b)(6) dismissal of the plaintiff's 42 U.S.C. § 1983 substantive due process claim because the plaintiff "did not allege a violation of a specific constitutional protection incorporated into the Bill of Rights."  The court also affirmed the dismissal of the procedural due process claim because "whether construed as one for a deliberate or negligent deprivation, was deficient as [the plaintiff] failed to plead and prove the inadequacy of state pre- or post- deprivation remedies.").

Here, Plaintiffs have not alleged a constitutionally protected or liberty interest or that Defendants have deprived them of any interest through an arbitrary or capricious action. While Plaintiffs may have alleged a Michigan housing law violation, that violation, in and of itself, does not create a civil rights action.   *See Jocham v. Tuscola County*, 239 F.Supp.2d 714, 729 (E.D.Mich. 2003) ("Violations of state law do not, by themselves, give rise to a federal cause of action under 42 U.S.C. § 1983." "A substantive due process claim can never arise merely because a state statute has been violated.") (citations omitted).

Plaintiffs fail to state a substantive due process cause of action.  The Court therefore dismisses this claim.

## IV.  Conclusion

For the above-stated reasons, the Court GRANTS Defendants' renewed motion to dismiss and dismisses this claim.

So ordered.

s/Nancy G. Edmunds_____
Nancy G. Edmunds
United States District Judge

Dated:  June 6, 2014

CERTIFICATION

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 6, 2014, by electronic and/or ordinary mail.

s/Carol J. Bethel_____
Case Manager

21